IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARTIN TAYLOR, | § | |
| | § | No. 67, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. N1607016381 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 24, 2019
Decided: July 8, 2019

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware, for Defendant Below, Appellant Martin Taylor.

Andrew J. Vella, Esquire, Department of Justice, Wilmington, Delaware, for Plaintiff Below, Appellee State of Delaware.

**SEITZ**, Justice:

Before the Superior Court adjudicates a defendant guilty but mentally ill of a crime, the court must examine "all appropriate reports"—including the presentence investigation—and hold a hearing "on the sole issue of the defendant's mental illness."[1] If the court is satisfied that the "defendant did in fact have a mental illness at the time of the offense to which the plea is entered," the court can adjudicate the defendant guilty but mentally ill of the crime.[2] If the court is not satisfied the defendant has a mental illness, or the facts do not support the plea, then the trial judge "shall strike such plea, or permit such plea to be withdrawn by the defendant."[3]

Milton Taylor appeared before a Superior Court judge and offered to plead guilty but mentally ill for the July 2016 murder of Whitney White. After his counsel told the court that Taylor was competent to plead guilty, the court conducted a plea colloquy with him but deferred accepting the plea until a later sentencing hearing, when the court would have the presentence investigation. The day after the hearing, Taylor told his counsel to withdraw his plea. His counsel refused. Taylor then made *pro se* requests to withdraw his plea. The court would not consider them because Taylor had counsel.

At the sentencing hearing, Taylor addressed the court and sought again to withdraw his plea. The trial judge refused to consider Taylor's request because

---

[1] 11 *Del. C.* § 408(a).
[2] *Id.*
[3] *Id.*

Taylor had counsel. Over Taylor's objection, the court accepted the guilty but mentally ill plea to manslaughter and possession of a deadly weapon during commission of a felony, and sentenced Taylor to 45 years in prison.

On appeal, Taylor claims the Superior Court plea proceedings were defective in several respects. First, the Superior Court failed to follow the statute's "sole issue" requirement by accepting Taylor's plea and sentencing him in the same hearing, and did not consider "all appropriate reports" relevant to Taylor's plea. Second, defense counsel violated Taylor's Sixth Amendment autonomy interest when they refused to withdraw his plea before the court accepted it. Third, the court should have honored Taylor's *pro se* request to withdraw his plea for the same reason—to secure Taylor's autonomy interest in his plea decision before the court accepted the plea.

We sympathize with the court and counsel in how to handle this unusual and difficult case. The guilty but mentally ill plea statute is confusing. It contemplates a single hearing to review the plea, which must include a review of the presentence investigation. But, the presentence investigation is not available until after the plea hearing. The court and counsel also struggled to deal with a defendant suffering from a mental illness who sought to withdraw a plea that counsel genuinely believed was in his best interest. And, Taylor was caught between his counsel who would

3

not withdraw his plea, and a court rule that allowed the court to ignore *pro se* filings when the accused has counsel.

On appeal, we navigate this unusual sequence of events as follows. First, Taylor waived his right to object to the "sole issue" statutory requirement. The State and counsel agreed that the plea hearing could be conducted in two parts. Also, Taylor did not cooperate with the presentence investigation, and any misstep under the statute would not rise to plain error. Second, defense counsel's refusal to withdraw Taylor's plea violated Taylor's Sixth Amendment autonomy interest to decide the objective of his defense. Taylor had the final say whether to withdraw his plea before the court accepted it. Having represented to the court that Taylor was competent to plead guilty, defense counsel should have followed Taylor's demand to withdraw his plea before the court accepted it. Finally, under Superior Court Criminal Rule 11, before adjudicating a defendant guilty but mentally ill by plea, the court must address the defendant in open court and be satisfied that the defendant is entering his plea knowingly, intelligently, and voluntarily. Before the court accepted Taylor's plea, he objected. Thus, Taylor could not have entered his plea voluntarily. We therefore vacate Taylor's conviction, and remand to the Superior Court for his counsel to review with Taylor whether he should withdraw his plea. If he is competent to make the decision and insists on withdrawing his guilty but mentally ill plea, the court should allow Taylor to withdraw his plea and proceed to trial.

4

I.

On July 20, 2016, Wilmington Police responded to a report of an unresponsive person in a residence. They found Whitney White dead from multiple stab wounds. Witnesses identified Taylor as the likely assailant. The next day police located Taylor and saw multiple knife wounds on his body. The police took him to the hospital and then arrested him for the killing.

After a psychological evaluation, a psychologist concluded that Taylor had a low IQ score and had been diagnosed by various professionals with Schizoaffective Disorder (Bipolar Type), Posttraumatic Stress Disorder with Dissociative Symptoms of Depersonalization, Borderline Personality Disorder, and Antisocial Personality Disorder.[4] Physicians prescribed medication for his disorders, but Taylor failed to take them consistently. The psychologist concluded "it would be expected that [the symptoms of his disorders] were present in his life at the time of the current alleged offense."[5]

After an unsuccessful motion to suppress Taylor's statement to police, on October 13, 2017, Taylor appeared before the Superior Court to plead guilty but mentally ill to manslaughter and possession of a deadly weapon during commission of a felony. Defense counsel told the court that Taylor was competent to participate

---

[4] App. to Opening Br. at A222-26 (Psychological Evaluation).
[5] *Id.* at A226.

5

in the proceedings and to enter his plea knowingly, intelligently, and voluntarily.[6]

During the hearing the judge noted a discontinuity in the statute—the plea hearing occurs before the presentence report is available, but the presentence report must be reviewed as part of the plea hearing.[7] After discussing with counsel the requirements of the statute, the court asked if counsel agreed that the court could proceed by conducting the hearing, but defer accepting the plea until sentencing, when the court would have the presentence report.[8] All counsel agreed with that procedure.[9] The court reviewed the Truth in Sentencing form, conducted a plea colloquy with Taylor, and Taylor pled guilty but mentally ill to the charges. The court deferred accepting the plea until the sentencing hearing.

The day after the hearing, Taylor wrote his defense counsel and asked them to withdraw his plea. On October 30, 2017, Taylor wrote another letter to his counsel, again seeking to withdraw his plea and raised a self-defense issue based on

---

[6] *Id.* at A231 (Oct. 13, 2017 Hearing Tr. ("I found his understanding of the charges against him to be – he's cognizant of what the charges are, he understands what the State's role in this matter is, he understands what his counsel's role is and the Court's role today is, and I believe he understands the nature of this offense, what he'll be pleading guilty to, guilty but mentally ill to, and the possible consequences that could come along with that. So, I believe he'll be entering it knowingly, intelligently, and voluntarily under the circumstances.").

[7] *Id.* at A230 ("When you take a GBMI plea you are supposed to – you must order a PSI and the PSI must be a factor in your consideration of whether or not you'll find him GBMI, so the suggestion would be that you do the plea colloquy, be satisfied that it's knowing and voluntary but defer the entry of the verdict until after the PSI has been ordered and on sentencing day then enter the finding, assuming you are satisfied from the PSI that the finding is appropriate.").

[8] *Id.* at A230-31.

[9] *Id.* at A231.

6

research he had done.  On November 2, 2017, his counsel responded to these letters. Their first letter explained that, after reviewing the applicable standard, they "found there is no legal basis upon which to make a motion to withdraw your guilty plea."[10] Their second letter explained in detail why, in their opinion, self-defense could not be asserted successfully.[11]

After his counsel twice refused to withdraw his plea, on November 15, 2017, Taylor filed a *pro se* motion to withdraw his plea claiming that he was "coerced into accepting the plea without acknowledging the defense I wanted to use or explaining to me any other options."[12]  According to Taylor, "[w]henever I meet with my attorney's their only solution is to take this plea that I continued to tell them I didn't want to accept."[13]  The court wrote counsel and explained that Superior Court Criminal Rule 47 prohibits the court from accepting *pro se* filings while a defendant is represented by counsel.  Further, the court stated that when the defendant has pled guilty but mentally ill, the court "should be circumspect before permitting a criminal defendant to proceed on his own."[14]  The court noted that "Mr. Taylor has able counsel for a reason, that may include protecting him from his own poor

---

[10] *Id.* at A355. (Nov. 2, 2017 first letter from counsel).
[11] *Id.* at A356-57 (Nov. 2, 2017 second letter from counsel).
[12] *Id.* at A237 (*Pro Se* Motion to Withdraw Plea).
[13] *Id.*
[14] *Id*.

judgment."[15]  Thus, according to the court, "unless and until Mr. Taylor's lawyers file a motion to withdraw his guilty plea, the Court will not consider his pro se pleading."[16]  The court also refused to consider another *pro se* filing seeking to withdraw the plea.[17]

Prior to the sentencing hearing, trial counsel wrote a letter to the court advocating for a minimum mandatory sentence of 27 years.  The letter highlighted Taylor's intellectual and mental limitations, history of abuse, and drug use.  Counsel also noted Taylor's "recent overtures to withdraw his plea" and noted that Taylor's desire to withdraw his plea "in large part stems from his fixation with pursuing a self-defense claim at trial."[18]  Counsel further told the court that it was the belief of "[c]ounsel and Dr. Cooney-Koss," Taylor's psychological expert, "that Mr. Taylor's fixation with a self-defense claim and withdrawal of his guilty plea may in large part be a product of his mental illness and irrational thought process."[19]  According to counsel, Taylor's "fixation" with pursuing a self-defense claim and withdrawing his plea were manifestations of his mental illness.[20]

---

[15] *Id*. at A239 (Jan. 2, 2018 email from court to counsel).
[16] *Id.*
[17] *Id*. at A240 (Dec. 7, 2017 letter from court to counsel).
[18] *Id*. at A292 (Jan. 8, 2018 letter from counsel to court).
[19] *Id*.
[20] *Id.*

At the January 9, 2018 sentencing hearing, Taylor's counsel argued for the minimum mandatory sentence. Addressing Taylor's earlier requests to withdraw his plea, defense counsel asked that the court view these requests not as a lack of remorse, "but really as a further projection of his mental illness."[21] Defense counsel asked the court to find Taylor guilty but mentally ill because "[t]he Court didn't make that finding at the time the plea was tendered."[22]

Before the court accepted Taylor's earlier plea, Taylor addressed the court and again asked to withdraw his plea, claiming that he "felt pressured" and "manipulated" and that his counsel "degraded" him, called him a "thug," "us[ed] a lot of profanity towards" him, and "scream[ed]" at him.[23] The court once again held that it would only accept a motion from counsel, and confirmed that counsel was not moving to withdraw the plea.[24] As they had done before, Taylor's counsel referred to Taylor's self-defense argument as a "fixation."[25] The court ruled that "to the extent that the record needs a finding of mental illness, the Court will make that finding based upon the documents that have been presented," and accepted the plea.[26] The court sentenced Taylor to 45 years in prison.

---

[21] *Id.* at A319 (Tr. of Sentencing Hearing).
[22] *Id.* at A320.
[23] *Id.* at A325-27.
[24] *Id.* at A327.
[25] *Id.*
[26] *Id.* at A328.

## II.

Under Delaware law, a defendant is guilty but mentally ill of a criminal offense when:

> the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a mental illness or serious mental disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such mental illness or serious mental disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trial of fact shall return a verdict of "guilty, but mentally ill."[27]

The procedure to plead guilty but mentally ill is set forth in § 408(a):

> Where a defendant's defense is based upon allegations which, if true, would be grounds for a verdict of "guilty, but mentally ill" or the defendant desires to enter a plea to that effect, no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); *has held a hearing on the sole issue* of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant did in fact have a mental illness at the time of the offense to which the plea is entered. Where the trier of fact, after such hearing, is not satisfied that the defendant had a mental illness at the time of the offense, or determines that the facts do not support a "guilty, but mentally ill" plea, the trier of fact shall strike such plea, or permit such plea to be withdrawn by the defendant. A defendant whose plea is not accepted by the trier of fact shall be entitled to a jury trial, except that if a defendant subsequently waives the right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.[28]

---

[27] 11 *Del. C.* § 401(b).
[28] 11 *Del. C.* § 408(a) (emphasis added).

A.

Taylor argues first that the Superior Court violated the "sole issue" requirement in § 408(a) because the court combined the plea hearing with the sentencing hearing. As part of this argument, he also claims that the court did not review "all appropriate reports" as required by the statute. The State responds that under plain error review, Taylor did not suffer prejudice from the combined hearing, and neither party contested his mental state at the time of the offense.

Because Taylor did not raise the issue below, we review for plain error. Under plain error review "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process," and the error must be "basic, serious and fundamental . . . and clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[29]

The Superior Court did not err for several reasons. First, all counsel agreed that the court could conduct an initial hearing and defer accepting the plea to the sentencing hearing.[30] Thus, Taylor has waived the issue. Second, even though the court accepted the plea at the sentencing hearing, the combined hearing was at most harmless error. The statute gives the State—not Taylor—an opportunity to contest a guilty but mentally ill plea. After all, Taylor offered the plea, and the State did not

---

[29] *Small v. State*, 51 A.3d 452, 456 (Del. 2012) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

[30] App. to Opening Br. at A230-31 (Oct. 13, 2017 Hearing Tr.).

object to the plea. Finally, Taylor had the hearing contemplated by the statute, the court reviewed the reports available to it, and Taylor did not cooperate with the presentence investigation.[31] Thus, the Superior Court did not plainly err when it held two hearings to consider Taylor's guilty but mentally ill plea.

B.

Taylor argues next that, under the Sixth Amendment, a criminal defendant's autonomy interest includes the final say over his plea decision. As Taylor argues, his counsel and the court failed to recognize his autonomy interest to decide whether to withdraw his guilty but mentally ill plea before the court accepted it. Although he did not raise the issue below, Taylor has raised a structural claim under the Sixth Amendment to the United States Constitution—the right to control his plea decision, even when represented by counsel. Thus, we make a rare exception and review his constitutional claim for the first time on appeal *de novo*.[32]

---

[31] App. to Opening Br. at A238 (Jan. 2, 2018 email from court to counsel).

[32] *McCoy v. Louisiana*, 138 S.Ct. 1500, 1510-11 (2018) ("Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence. . . . Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless-error review."). *Williams v. State*, 56 A.3d 1053, 1055 (Del. 2012) (reviewing *de novo* a denial of self-representation structural error); *Lewis v. State*, 757 A.2d 709, 710 (Del. 2000) (reviewing a Sixth Amendment claim not raised below on the merits "because it presents important questions relating to the Sixth Amendment right to counsel, attorney ethics, judicial responsibility, and fundamental fairness in the administration of justice throughout a criminal proceeding.").

In *Cooke v. State* we reviewed United States Supreme Court precedent addressing the dividing line between those decisions to be made by counsel, and those within the final control of the accused.[33] The attorney controls "the day-to-day conduct of the defense," meaning they "decid[e] if and when to object, which witnesses, if any, to call, and what defenses to develop."[34] But, "certain decisions regarding the exercise or waiver of basic trial and appellate rights are so personal to the defendant 'that they cannot be made for the defendant by a surrogate.'"[35] The accused has the "ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."[36] This is because "such choices 'implicate inherently personal rights which would call into question the fundamental fairness of the trial if made by anyone other than the defendant.'"[37] Even if these decisions "are indeed strategic choices that counsel might be better able to make, because the consequences of them are the defendant's alone, they are too important to be made by anyone else."[38] And, "counsel cannot undermine the defendant's right to make these personal and

---

[33] 977 A.2d 803 (Del. 2009).
[34] *Id.* at 840-41 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977).
[35] *Id.* at 841 (quoting *Florida v. Nixon*, 543 U.S. 175, 187 (2004)).
[36] *Id.* at 849 (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).
[37] *Id.* at 841 (quoting *Arko v. People*, 183 P.3d 555, 558 (Colo.2008)).
[38] *Id.* at 842.

fundamental decisions by ignoring the defendant's choice and arguing affirmatively against the defendant's chosen objective."[39]

Taylor's autonomy interest in his plea decision includes the final say whether to withdraw a guilty but mentally ill plea under § 408(a) before the plea is accepted by the court.[40]  If a defendant pleads guilty but mentally ill to a crime, the plea "shall be accepted when the requirements of [Rule 11] applicable to a plea of guilty are met and the court finds that the defendant was mentally ill at the time of the offense, in accordance with 11 Del. C. § 408."[41]  Under the statute, if the court is not satisfied that the defendant was mentally ill at the time of the offense, "the trier of fact shall strike such plea, or permit such plea to be withdrawn by the defendant."[42]  The fair import of the statutory language is that the defendant has an absolute right to withdraw a guilty but mentally ill plea before the plea is accepted by the court.  Our interpretation of § 408(a) is consistent with the rules of other courts generally

---

[39] *Id.*

[40] *See, e.g., Commonwealth v. Tigue*, 459 S.W.3d 372, 386 (Ky. 2015) ("Just as the decision whether to enter a guilty plea is personal to the defendant, so too is the decision whether to ask to withdraw such a plea"); *State v. Barlow*, 17 A.3d 843, 848 (N.J. App. 2011) (requiring counsel to abide by defendant's choice to withdraw plea).

[41] Super. Ct. Crim. R. 11(i).

[42] 11 *Del. C.* § 408(a).

applicable to any plea not yet accepted by the court,[43] the common law,[44] and, as discussed earlier, a defendant's Sixth Amendment autonomy interest in controlling his plea decision.[45] Thus, Taylor did not have to show a "fair or just reason" or any other reason to withdraw a plea that had not been accepted by the court.[46]

---

[43] *See*, *e.g*., Fed. R. Crim. P. 11(d)(1) ("A defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason."); Fla. R. Crim. P. 3.172(g) ("No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by this rule. Until that time, it may be withdrawn by either party without any necessary justification."); Mich. Ct. R. 5.941(D) ("Before the court accepts the plea, the juvenile may withdraw the plea offer by right."); N.D. R. Crim. Rule 11(d)(1) ("A defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason).

[44] *See, e.g. State v. Willis*, 820 A.2d 1216, 1218-19 (Me. 2003) (treating an unaccepted plea as temporarily rejected, and therefore free to be withdrawn); *Hahn v. State*, 303 S.E.2d 299, 303 (Ga. App. 1983) ("[I]t was error to refuse to allow appellants to withdraw their pleas because the trial judge who conducted the plea hearing apparently never formally accepted them."); *Jackson v. State*, 590 S.W.2d 514 (Tex. Crim. App. 1979) ("[A] defendant may withdraw his guilty plea as a matter of right without assigning reason until such judgment has been pronounced or the case has been taken under advisement."). There is contrary authority. *See e.g.*, *State v. Tuttle*, 504 N.W.2d 252 (Minn. App. 1993) (denying withdrawal of a plea requested while the court reserved authority to accept a plea pending a pre-sentence investigation); *Carter v. State*, 739 N.E.2d 126, 131 (Ind. 2000) ("[C]ourt permission is required to withdraw a guilty plea, even when the plea has not been accepted"). Our view is consistent with the proposition that an offer, not accepted, may be withdrawn, as is the case in contract law.

[45] As noted earlier, the statute is ambiguous on how to order the proceedings before adjudicating a defendant guilty but mentally ill of a crime by plea. For future guidance, we interpret the statute as follows. A defendant can plead guilty but mentally ill to a crime, and the court can accept the plea in the same hearing after finding under Superior Court Criminal Rule 11 that the defendant's plea is made knowingly, intelligently, and voluntarily. But, the court should defer adjudicating the defendant guilty but mentally ill of the crime until after it holds a hearing where the sole issue is the defendant's mental illness. As part of the evidence at the second mental illness hearing, the court should consider the presentence investigation. After the second hearing, if the court is satisfied that the requirements of § 408(a) have been met, the court should adjudicate the defendant guilty but mentally ill of the offense and impose sentence. If the statutory requirements are not met, the court should strike the plea or allow the defendant to withdraw it.

[46] Super. Ct. Cr. R. 42 (a "fair and just reason" must be shown to withdraw a guilty plea).

Under the unusual circumstances of this case, defense counsel and the court should not have impeded Taylor in exercising his Sixth Amendment-secured autonomy to control his plea decision when the court had not yet accepted his plea. The day after the plea hearing Taylor demanded that counsel withdraw his guilty but mentally ill plea. He persisted in his requests to withdraw his plea, and when counsel refused, Taylor tried to withdraw his plea without assistance from counsel. Although defense counsel acted in good faith and reasonably believed that withdrawing the plea was not in Taylor's best interest, the ultimate decision was not theirs to make.[47] Defense counsel cannot "ignor[e] the defendant's choice and argu[e] affirmatively against the defendant's chosen objective."[48]

The court should also have permitted Taylor to withdraw his plea at the second hearing. While Superior Court Rule 47 allows a court to disregard *pro se* filings from defendants represented by counsel, plea proceedings are governed by Superior Court Criminal Rule 11. Rule 11 requires an extensive colloquy directly between

---

[47] *McCoy,* 138 S.Ct. at 1508 ("Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are."); *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017) ("a defendant must be allowed to make his own choices about the proper way to protect his own liberty."); D. R. P. C. 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation. . . . the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.").

[48] *Cooke*, 977 A.2d at 842.

the trial judge and the defendant where the trial judge seeks to determine whether the guilty plea is offered knowingly, intelligently, and voluntarily.[49] At the January 9, 2018 hearing, Taylor asked to withdraw his guilty plea offer and thus could not have offered his plea voluntarily. Because the court had not yet accepted Taylor's plea, it should have acknowledged that Taylor was withdrawing his offer to plead guilty and let the case proceed to trial.

## III.

Finally, we address the difficult issue that troubled defense counsel and still hangs over this case—Taylor's mental illness and its impact on his Sixth Amendment autonomy interest in withdrawing his plea. In *Godinez v. Moran*, the United States Supreme Court considered a defendant suffering from a mental illness and his competency to represent himself at trial.[50] The Court "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard."[51] Under *Dusky*, the court must be satisfied that the defendant (1) "has a rational as well as a factual understanding of the proceedings against him" and (2) "has

---

[49] Super, Ct. Cr. R. 11(d) ("Before accepting a plea of guilty . . . to a felony . . . the court must address the defendant personally in open court[,]" and "[t]he court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary.").

[50] 509 U.S. 389 (1993).

[51] *Id*. at 398.

sufficient present ability to consult with his lawyer with a reasonable degree of understanding."[52] The Court held in *Godinez* that the decision to plead guilty or waive counsel "is no more complicated than the sum total of decisions that a [represented] defendant may be called upon to make during the course of a trial."[53] Thus, the *Dusky* competence standard applies to a defendant's decision to withdraw his plea.[54]

Taylor's counsel represented to the court that Taylor was competent to participate in the first hearing and to enter a guilty but mentally ill plea. But, when it came to withdrawing the plea, Taylor's counsel told the court that Taylor's insistence on withdrawing his plea, and the multiple *pro se* motions he filed, were a "fixation" and a manifestation of his mental illness.[55] On remand, if his counsel

---

[52] *Dusky v. United States*, 362 U.S. 402, 402 (1960).

[53] *Godinez*, 509 U.S. at 399.

[54] More recently, in *Indiana v. Edwards*, 554 U.S. 164 (2008), the United States Supreme Court held that the Sixth Amendment did not prohibit the states from requiring counsel at trial for a defendant competent to stand trial but whose severe mental illness made them incompetent to conduct a trial by themselves. The Court has not made a similar distinction for a defendant's plea decision, meaning *Godinez* stands as the current state of the law for the plea decision. *See also* Erica J. Hashimoto, *Resurrecting Autonomy: The Criminal Defendant's Right To Control The Case*, 90 BU.L. Rev. 1147, 1184-87 (2010) (noting "a legitimate reason for concern" in the way the criminal justice system treats seriously mentally ill defendants, but also noting that "there is a palpable unfairness in telling a defendant that he is competent to stand trial but not sufficiently competent to exercise constitutionally protected rights…."); Josephine Ross, *Autonomy Versus A Client's Best Interests: The Defense Lawyer's Dilemma When Mentally Ill Clients Seek To Control Their Defense*, 35 Am. Crim. L. Rev. 1343, 1372-86 (1998) (noting the "uneasy relationship between mental illness and criminal law" and proposing that criminal defense lawyers be able to exercise "surrogate decisionmaking" as part of an "ethic of care" when dealing with mentally ill clients.).

[55] App. to Opening Br. at A292 (Jan. 8, 2018 letter from counsel to court) ("It is the belief of Counsel and Dr. Cooney-Koss that Mr. Taylor's fixation with a self-defense claim and withdrawal

---

18

believes that Taylor's mental illness raises competency issues under the *Dusky* standard, he should raise those with the court to allow the court to make a competency determination before considering Taylor's request to withdraw the plea.[56]

IV.

We reverse the Superior Court's judgment and remand the case for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

of his guilty plea may in large part be a product of his mental illness and irrational thought process").

[56] *See* Del. R. Prof. C. 1.14(b) ("When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action"); *Red Dog v. State*, 625 A.2d 245, 247 (Del. 1993) ("If an attorney has a reasonable and objective basis to doubt a client's competency to make a decision foregoing further appeals, the attorney must, in a timely fashion, so inform the trial court and request the court to make a judicial determination of the defendant's competency."); *see also* ABA Criminal Justice Standards for the Defense Function, Control and Direction of the Case § 4-5.2(b) (4th ed. 2015) ("If defense counsel has a good faith doubt regarding the client's competence to make important decisions, counsel should consider seeking an expert evaluation from a mental health professional, within the protection of confidentiality and privilege rules if applicable").