SUPERIOR COURT
OF THE

CRAIG A. KARSNITZ,
RESIDENT JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5263

August 14, 2023

Kimberly A. Price, Esquire
Collins & Price
8 East 13th Street
Wilmington, DE 19801
Counsel for Petitioner

Haley W. King, Esquire
Deputy Attorney General, Department of Justice
13 The Circle
Georgetown, DE 19947
Counsel for the State of Delaware

Re:  *State of Delaware v. James E. West,* Cr. No. 1905004787 and 1905004634
     Motion for Postconviction Relief (R-1)

Dear Counsel:

**Procedural Background**

On March 2, 2020, James E. West ("Petitioner" or "Mr. West") pled guilty to

two charges of Robbery in the First Degree and one charge of Robbery in the Second

Degree.[1]

---

[1] Other offenses originally charged were ultimately resolved by *nolle prosequi*.

There were two plea offers made to Mr. West, through his trial counsel, James P. Murray, Esquire ("Trial Counsel" or "Mr. Murray") by the State of Delaware (the "State") in the case: one extended by Deputy Attorney General Rebecca E. Anderson, Esquire ("Ms. Anderson") (the "Anderson Plea Offer") and another extended by Deputy Attorney General Adam Gelof, Esquire, who had taken over the case for the State from Anderson (the "Gelof Plea Offer").

Under the Anderson Plea Offer, there were three (3) charges. The defense could argue for a minimum mandatory sentence of eight (8) years of Level 5 time, with a maximum sentence of 75 years, and the State would cap its recommendation at 20 years. The Anderson Plea Offer expired.

Under the Gelof Plea Offer, which Mr. West views as less favorable than the Anderson Plea Offer, there were seven (7) charges. The defense could argue for a minimum mandatory sentence of nine (9) years of Level 5 time, with a maximum sentence of 92 years. Mr. West accepted the Gelof Plea Offer.

On July 30, 2021, I sentenced Mr. West as follows: for the first Robbery in the First Degree offense, 25 years at Level 5, suspended after 4 years; for the second Robbery in the First Degree offense, 4 years at Level 5; and, for the Robbery in the Second Degree offense, 4 years at Level 5. This sentence exceeded the amount of Level 5 time which he had requested under the Gelof Plea Offer and would have requested under the Anderson Plea Offer.

On November 15, 2021, I received Petitioner's first *pro se* Motion for Postconviction Relief under Delaware Superior Court Rule Criminal Rule 61 (the "Motion"), dated November 10, 2021, with respect to the above-referenced matter, together with a Memorandum of Law in Support of the Motion (the "Memorandum of Law") and an Affidavit to Accompany the Motion (the "Motion Affidavit"). The sole ground that he stated for relief is that Mr. Murray violated his constitutional right to the effective assistance of counsel by failing to properly notify him of the Anderson Plea Offer before it expired, which violated his right to make a voluntary, knowing, and intelligent assessment and acceptance of a guilty plea. His Motion did not request the appointment of postconviction counsel, nor was I obligated to provide postconviction counsel to him.[2] Nonetheless, I later directed that Postconviction Counsel ("PCC") be appointed to represent Mr. West, as further discussed below.

In his Memorandum of Law and Motion Affidavit, Mr. West made certain allegations about, and he states quotations by, Mr. Murray. I thus expanded the record to include a response to these allegations by Trial Counsel.[3] Trial Counsel submitted his affidavit (the "TC Affidavit") on January 6, 2022, which became a part of the record.[4]

---

[2] Super. Ct. Crim. R. 61(e)(1) and (3).
[3] Super. Ct. Crim. R. 61(g)(1).
[4] Super. Ct. Crim. R. 61(g)(2).

The State filed its Answer on March 8, 2022.[5] Mr. West filed his *pro se* Reply on April 5, 2022.[6] I granted his second request for the appointment of PCC, and, after PCC was appointed, I held an evidentiary hearing on June 6, 2023.[7] At that hearing, three witnesses testified: Mr. West, Ms. Anderson, and Mr. Murray. Certain email chains were admitted as evidence. After that hearing, I allowed the parties to submit written post-hearing submissions. PCC filed her submission on July 28, 2023. The State filed its submission on August 4, 2023.

The relief that Petitioner seeks in the Motion is that I order the State to re-extend the Anderson Plea Offer to him so that he may accept it, after which I would resentence him. This is my ruling on the Motion.

**Evidentiary Hearing**

The pivotal factual question of this case is: did Mr. West know about the Anderson Plea Offer before it expired and reject it? I held the evidentiary hearing primarily to address this question. I must weigh the credibility of the three witnesses, whose testimony is, in several respects, diametrically opposed. The evidence presented at the evidentiary hearing with respect to the Anderson Plea Offer is summarized chronologically as follows.

---

[5] Super. Ct. Crim. R. 61(f)(1) and (2).
[6] Super. Ct. Crim. R. 61(f)(3).
[7] Super. Ct. Crim. R. 61(h).

**November 18, 2019**

At the first case review, which Mr. West recalls, he and Mr. Murray discussed a plea, the evidence in the case, and pretrial suppression motions. The State offered 20 years, and Mr. West countered with 11 or 12 years.

**December 10, 2019**

Mr. Murray testified that he met with Mr. West by video and passed along a plea offer of 18 years from the State, which Mr. West rejected. Mr. West has no recollection of this meeting.

**December 18, 2019**

Mr. Murray and Ms. Anderson exchanged emails. Ms. Anderson made the Anderson Plea Offer, and stated that it remained open until January 17, 2020.

**January 16, 2020**

Mr. Murray and Ms. Anderson again exchanged emails. Anderson extended the Anderson Plea Offer until January 24, 2020.

Mr. Murray testified that he met with Mr. West by video and discussed the Anderson Plea Offer with him. Mr. West has no recollection of this meeting. The Anderson Plea Offer is not memorialized in Trial Counsel's notes of this meeting.

**January 24, 2020**

On the day the Anderson Plea Offer was to expire, Mr. West and Mr. Murray met in person at Sussex Correctional Institution.  Mr. West recalls this meeting. Mr.

Murray gave Mr. West a hard copy of the Anderson Plea Offer, but Mr. Murray testified that it was discussed only briefly, if at all. Mr. West testified that it was not discussed. The Anderson Plea Offer is not memorialized in Mr. Murray's notes of this meeting. Mr. Murray did not think that Mr. West was interested in the Anderson Plea Offer, but rather in litigating pretrial motions. Mr. Murray did not have Mr. West sign the rejection line on the Anderson Plea Offer because, according to Mr. Murray's testimony, that typically would happen only at case review and would be presented to me. Mr. West discussed the Anderson Plea Offer with his fiancée after he received the hard copy.

In an email to Ms. Anderson that same day, Mr. Murray informed the State that Mr. West had rejected the Anderson Plea Offer.

**March 2, 2020**

After Petitioner's pretrial motions were denied, he met with Mr. Murray to consider the Gelof Plea Offer, which was ultimately accepted. During Mr. West's plea colloquy with me on this date, he stated that he was satisfied with Mr. Murray's representation of him. However, he testified in the evidentiary hearing that he was not satisfied with Mr. Murray's representation, and admitted that he lied to me about this because he was afraid that the Gelof Plea Offer would be withdrawn. Moreover, although given the opportunity to do so, Mr. West never mentioned anything about the Anderson Plea Offer to me.

6

Mr. West puts heavy emphasis on the fact that, at the evidentiary hearing, Mr. Murray generally did not have a strong recollection of the events in this case, and that he failed to note in writing any discussion of the Anderson Plea Offer during the video meeting on January 16, 2020 or the in-person meeting on January 24, 2020. However, the facts of this case go back to 2019 and 2020, and it is not surprising that Mr. Murray may not have a perfect recollection of those facts. It does not follow that the mere absence of notes about the Anderson Plea Offer means that it was not discussed. Mr. Murray explained that Mr. West was much more focused on the pretrial motions than any plea at that time. Speaking of recollection, I am troubled by Mr. West's complete lack of recollection of the video meeting on December 10, 2019 and the video meeting on January 16, 2020. These both happen to be video meetings, as opposed to in-person meetings with Trial Counsel. January 16, 2020 happens to be the day that Ms. Anderson emailed Mr. Murray to extend the Anderson Plea Offer until January 24, 2020, and the day Mr. Murray testified he discussed the Anderson Plea Offer with Mr. West.

Weighing all the email evidence and the testimony at the evidentiary hearing, I find the testimony of Ms. Anderson and Trial Counsel more credible than the testimony of Mr. West. Mr. West has convenient gaps of memory that belie the documentation and extension of the Anderson Plea Offer.

I do so for several reasons. Mr. Murray testified that communicating a plea offer to a client is the *sine qua non* of appropriate and effective representation. He fulfills the obligation as often as he breathes. In addition, at Mr. West's plea colloquy, and at a time when he now asserts he was aware of what he now claims was Mr. Murray's failure in an essential element of his representation, he told me he was satisfied with Mr. Murray's representation. Mr. West's excuse that he thought the Gelof Plea Offer might be rescinded holds no water for me. His current change of position is convenient and an obvious effort to manufacture a claim he believes will now be helpful to him. Finally, the timing of the meetings Mr. West had with Mr. Murray in relation to both plea offers supports Mr. Murray's position.

I know Mr. Murray and hold him in high regard. His work in front of me on a regular basis is routinely professional and effective. But these comments are not the reason I find his testimony credible, and it does not influence my decision. The reasons I enumerated in the previous paragraph are the basis for my decision.

**Legal Analysis**

After stating the well-known legal parameters of Delaware Criminal Rule 61 and the principles of the *Strickland*[8] and *Ploof*[9] cases, Petitioner cites specific cases related to the assistance of counsel during pre-trial plea negotiations. The United

---

[8] *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which sets forth the two-prong test for ineffective assistance of counsel claims.

[9] *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013), which adopted the *Strickland* test in Delaware.

States Supreme Court has held that "the Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions."[10] This right is further guaranteed under Article I § 7 of the Delaware Constitution. The United States Supreme Court further explained that "the right to counsel is the right to effective assistance of counsel."[11]

The right to counsel attaches "when the adversarial judicial proceedings are commenced and continues throughout all 'critical stages' of the proceedings ... "[12] The Delaware Supreme Court has determined that a critical stage includes the pretrial process.[13] The United States Supreme Court has made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."[14] A defendant has an autonomous interest in deciding whether to accept a guilty plea under the Sixth Amendment and an accused has the ultimate authority to decide whether to plead guilty.[15]

---

[10] *Missouri* v. *Frye,* 566 U.S. 132, 138 (2012).

[11] *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 686 (1984)). *See also Urquhart v. State,* 203 A.3d 719, 728 (Del. 2019) (citing *McMann v. Richardson,* 397 U.S. 759, 771 (1970)).

[12] *Norman v. State,* 976 A.2d 843, 857-58 (Del. 2009).

[13] *Urquhart,* 203 A.3d at 729.

[14] *Frye,* 566 U.S. at 140 (quoting *Padilla* v. *Kentucky,* 599 U.S. 356,373 (2010)).

[15] *Taylor* v. *State,* 213 A.3d 560, 567-68 (Del. 2019).

In 2012, the United States Supreme Court decided the companion cases of *Lafler v. Cooper*[16] and *Missouri v. Frye*,[17] which confirmed the right to effective assistance of counsel during plea bargaining and deployed the *Strickland* standard as the vehicle for assessing such claims.

In *Lafler,* the defendant wanted to accept a 61-to-85-month plea, but his lawyer convinced him to go to trial because of his mistaken belief that if a victim is shot below the waist, the prosecution cannot establish intent to murder under Michigan law.[18] Lafler was convicted and was sentenced under a mandatory term of 185-360 months.

*Lafler* established an offshoot of *Strickland* prejudice for plea situations:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[19]

The Supreme Court decided the correct remedy was to order the State to

---

[16] 566 U.S. 156 (2012).
[17] 566 U.S. 134 (2012).
[18] *Lafler,* 566 U.S. at 161.
[19] *Id.* at 164.

reoffer the plea agreement, then leave resentencing to the judge's discretion.[20]

In *Frye,* the prosecution extended two formal plea offers with a fixed expiration date.[21] Defense counsel in *Frye* failed to communicate the pleas, which expired, resulting in a harsher result for the defendant.[22] The Supreme Court noted that when "defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires."[23] The *Frye* court established that to establish prejudice, the petitioner must demonstrate a reasonable probability that the uncommunicated plea offer would have been accepted had the attorney not failed to communicate it.[24]

The *Frye* court explained that to show prejudice in cases where a plea offer lapsed or was rejected due to counsel's deficient performance:

> [D]efendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser

---

[20] *Id.* at 174.
[21] *Id.* at 138-39.
[22] *Id.* at 139.
[23] *Id.* at 145.
[24] *Id.* at 148.

charge or a sentence of less prison time.[25]

The Supreme Court remanded the case for an evidentiary hearing to assess the prejudice prong.[26] It also determined that any amount of additional jail time has Sixth Amendment significance.[27]

In *Burns v. State,*[28] the Delaware Supreme Court reviewed a *Lafler* claim. Defendant rejected a plea with a probation recommendation and went to trial instead. After being found guilty, he was sentenced to 35 years.[29] In *Burns* our Supreme Court adopted the *Lafler* standard for deciding ineffective assistance claims with respect to plea negotiations.[30] More on *Burns* later.

Our Supreme Court considered this issue again last month in *Owens v. State.*[31] Owens contended that trial counsel failed to communicate a plea offer at his final case review.[32] The trial court rejected Mr. Owens' postconviction claim of ineffective assistance of counsel without the benefit of an evidentiary hearing.[33] On appeal, he argued that trial counsel's failure to communicate the second plea offer constituted a complete denial of counsel during the critical

---

[25] *Frye,* 566 U.S. at 147.
[26] *Id.* at 151.
[27] *Glover v. U.S.*, 531 U.S. 198, 203 (2001).
[28] 76 A.3d 780 (Del. 2013).
[29] *Id.* at 784.
[30] *Id.* at 785.
[31] 2023 WL 4534933 (Del. July 13, 2023).
[32] *Id.* at *3.
[33] *Id.* at *5.

plea-bargaining stage.[34] The Delaware Supreme Court found that this contention failed;[35] therefore, he was required to show prejudice under *Strickland*.[36] The Court further found that the Superior Court's crediting of trial counsel's sworn statement and not holding an evidentiary hearing was not an abuse of discretion.[37] It held that the Superior Court's factual determination that the defendant received and rejected every plea offer was supported by the record.[38]

The Supreme Court in *Owens* found that the defendant could not show prejudice under *Strickland*.[39] Nothing in the amended motion or his supporting affidavit indicated that the defendant would have accepted a plea offer at his final case review.[40] The Supreme Court affirmed the trial court's denial of Mr. Owen's amended motion for postconviction relief.[41]

Both *Burns* and *Owens* buttress my finding that Petitioner is not entitled to Rule 61 relief. As in *Burns*, the record in this case demonstrates that Trial Counsel communicated the Anderson Plea Offer to Mr. West, as well as the consequences of accepting the Anderson Plea Offer and not accepting the Anderson Plea Offer. I, like the *Burns* Court, find that Trial Counsel was not ineffective.

---

[34] *Id.* at *6.
[35] *Id.*
[36] *Id.*
[37] *Id.* at *7.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at *10.

I went a step further than the trial judge in the *Owens* case and held an evidentiary hearing and allowed post-hearing briefings. Yet, after all of that, I still find, like the *Burns* Court, which did not have the benefit of such a hearing or briefings, that the record supports that Mr. West received and rejected the Anderson Plea Offer. Trial Counsel did not provide ineffective assistance.

Even assuming that Trial Counsel's assistance *was* ineffective, Petitioner cannot show prejudice under *Strickland*. Nothing in the record indicates to me that Mr. West would have accepted the Anderson Plea Offer, other than with 20-20 hindsight after his pretrial motions were denied, he accepted the Gelof Plea Offer, and I imposed a longer sentence than he anticipated.

Even if I were to grant Petitioner the relief he seeks, namely, to order the State to re-extend the Anderson Plea Offer so that he may accept it, resentencing is in my discretion, and there is no guarantee that I would adhere to the terms of the Anderson Plea Offer at resentencing.

**Conclusion**

For the reasons discussed above, the Motion is **DENIED**.

**IT IS SO ORDERED**.

Very truly yours,

/s/ Craig A. Karsnitz

14

cc:    Prothonotary
James P. Murray, Esquire, Office of Defense Services